**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEON FIELDS, | : | |
| Plaintiff, | : | No. 22-cv-3814-JMY |
| | : | |
| vs. | : | |
| | : | |
| RECONN HOLDINGS, LLC., et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**Younge, J.**                                                                                      **April 30, 2024**

Currently before the Court is a Motion for Summary Judgment filed by Defendants,

Reconn Holdings, LLC, ("Reconn") and USIC, LLC ("USIC").  The Court finds this matter

appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78; L.R.  7.1(f).  For the

reasons set forth below, Defendants' Motion will be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND:

### A.    Factual Background:

Defendant, Reconn Holdings, LLC, ("Reconn") is a subsidiary of Defendant, USIC, LLC

("USIC") (collectively the "Defendant Companies").  Reconn offers a wide range of

underground utility locating, inspection, vacuum extraction, and mapping services that its

customers (primarily public utility companies) utilize to safely maintain their infrastructure

throughout the country.  (Schmidtmann Declaration ¶¶ 1, 5, Defendants Statement Undisputed

Material Facts ("Defs' SUMF") Exhibit A, ECF No. 26-1.)

Plaintiff was hired by Reconn in May 2017 to work as a Vacuum Extraction Technician

("Vac Tech").  (Plaintiff's Statement of Disputed Facts ("Pl's SDF") ¶ 7, ECF No. 28-2.)

Vacuum extraction is one of the services offered by Reconn.  (*Id.* ¶ 7.)  Employees performing

this service – Vac Techs – use pressurized air and water to break up ground and remove dirt/mud

with a vacuum that is connected to a truck ("Vac Truck") so that underground utilities can be located.  (*Id.* ¶ 8.)  Some Vac Trucks can be operated by one person while Larger Vac Trucks require two employees – one who drives the Vac Truck (sometimes called a "lead driver") and another who drives a smaller dump truck or pickup truck that follows the Vac Truck to a worksite (sometimes called a "helper").  (*Id.* ¶ 11.)

When Reconn hired Plaintiff as a Vac Tech in May 2017, he initially reported to Jose Rivera.  (*Id.* ¶ 15.)  Plaintiff remained in that position until early 2018, when his doctor recommended that he be placed on light duty after he suffered an injury to his right hand at work. (*Id.* ¶ 17.)  At his doctor's request, Reconn placed Plaintiff on a project that was less physically demanding than those normally assigned to Vac Techs.  (*Id.* ¶ 18.)  Thereafter, Plaintiff worked for Reconn in a light-duty capacity as an underground utility locator on what was called the Locusview Project.[1]  (*Id.* ¶ 19.)

Plaintiff began working as a locator on the Locusview Project in mid-April 2018, reporting to Bob D'Ginto.  (*Id.* ¶ 21.)  Plaintiff had never mapped underground utilities before, so he was required to undergo training before he could begin working on his own.  (*Id.* ¶ 22.) After completing training, Plaintiff's responsibilities on the Locusview Project were to locate PECO's underground utilities, measure their dimensions and coordinates, and record that information into the Locusview platform.  (*Id.* ¶ 23.)  While Plaintiff lacked experience in

---

[1]  The term "Locusview" refers to a digital construction management platform that utility companies commonly use to track where their utility lines are buried underground.  (SUMF at ¶ 20.)  For purposes of this case, the "Locusview Project" or the "Project" refers to the ongoing locating and digital mapping work PECO Energy Company ("PECO") hired Reconn to perform in the greater Philadelphia area (*i.e.*, creating maps of PECO's unground utilities by using the Locusview platform).  (*Id.*)

locating/mapping, he worked alongside several individuals who Defendants allege had significant experience in the locating industry, including Bob D'Ginto (who purportedly had over 10 years of experience with Reconn and USIC), Mike Fondots (who purportedly worked as a locator for more than 25 years at USIC) and Nick Wheeler (who purportedly worked for approximately 10 years as a locator for USIC).  (*Id.* ¶ 24.)  Plaintiff continued working on the Locusview Project until December 2021 despite the fact that his hand had fully recovered from the 2018 injury.  (*Id.* ¶ 25.)  In December 2021, PECO announced that it needed to reduce the number of Reconn employees that would be staffing the Locusview Project.  (*Id.*)

In early December 2021, PECO announced that, for budgetary reasons, it needed to reduce the number of employees assigned to the Project from eight to three.  (*Id.* ¶ 27.)  PECO also instructed Reconn which three employees it wanted to remain on the Project.  (*Id.* at ¶ 28.)  Specifically, PECO requested that Bob D'Ginto, Mike Fondots, and Nick Wheeler remain on the Project.  (*Id.* ¶ 29.)  Chris Schmidtmann – an employee who worked for Defendants – contacted the five Locusview team members who were not selected to remain on the Project, one of whom was Plaintiff, and explained that while it was not Reconn's decision, PECO had removed their positions from the Locusview Project, effective December 10, 2021.  (*Id.* at ¶ 32; Schmidtmann Declaration ¶ 15, Defs' SUMF Exhibit A, ECF No. 26-1.)  Mr. Schmidtmann avers that he assured Plaintiff that Defendants wanted to retain him, and he offered Plaintiff a position either as a Vac Tech within Reconn or as a utility locator within USIC.  (*Id.* ¶ 33.)  Mr. Schmidtmann avers that during this conversation, Plaintiff asked if the Company could lay him off instead of reassigning him to one of the two positions offered.  (*Id.* ¶ 34.)  Mr. Schmidtmann alleges that he told Plaintiff he would need time to explore the possibility of Plaintiff's request to be laid off.  (*Id.* ¶ 35.)

3

The next day, Mr. Schmidtmann followed up with Plaintiff about his request to be laid off. (*Id.* ¶ 38.) During the call, Mr. Schmidtmann told Plaintiff that the Company was not prepared to lay him off, and he proceeded to explain the three available options as follows: (1) work as a Vac Tech at Reconn; (2) work as a utility locator at USIC; or (3) take a reduction in force. (*Id.* ¶ 39.) Plaintiff responded by requesting that all future communication on the topic be in writing and by email only. (*Id.* ¶ 40.) Mr. Schmidtmann followed up with an email that same day, reiterating the three options. (*Id.*) Eventually, however, Plaintiff chose Option 1 – to remain with Reconn as a Vac Tech. (*Id.* at ¶ 42.) Plaintiff did not experience any reduction in pay or benefits. (*Id.*, Plaintiff's Deposition at 122, Defs' SUMF, Exhibit G, ECF No. 27-7.) Plaintiff reported to his Vac Tech role on December 12, 2021. (Defs' SDF at ¶ 43.)

### 1.     Charge of Discrimination filed with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission:

On or about January 6, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission ("Charge of Discrimination"). (Plaintiff's Statement of Undisputed Facts ("Pl's SUF") ¶¶ 45 & 46, ECF No. 28-3.)

### 2.     Auto Garage Incident on February 23, 2022:

On February 23, 2022, Plaintiff was alleged to have created an unsafe work environment in relation to his conduct at a third-party automobile garage during routine maintenance of a Commuter Truck provided to Plaintiff by Reconn.[2]  (*Id.* ¶¶ 79-80.)

---

[2] Reconn provides Vac Techs with company vehicles (typically a Chevrolet Colorado) that they can use to commute to and from work ("Commuter Trucks"). (SUMF at ¶ 12.) Reconn provides Commuter Trucks free of charge, and Reconn pays for all gas and vehicle maintenance. (*Id.* at ¶ 13.) Vac Techs are subject to the same safety protocols with their Commuter Trucks as they are when they are operating a work vehicle. (*Id.* at ¶ 14.)

On February 23, 2022, Plaintiff reported to work around 6:30 a.m. at Reconn's King of Prussia office.  Upon arrival, he notified Jose Rivera (who was in charge of managing Reconn's vehicle fleet) that the oil in his Commuter Truck needed to be changed.  (*Id.* ¶ 57.)  Mr. Rivera asked Plaintiff for his keys and said that he would take his Commuter Truck to the auto garage next door so that it could be serviced while Plaintiff was working that day.  (*Id.* ¶ 58.) Plaintiff gave the keys to Mr. Rivera and proceeded to a worksite.  (*Id.* ¶ 59.)  Mr. Rivera dropped the keys to the Commuter Truck off at an auto garage shortly thereafter.  (*Id.*)

Plaintiff came back early – at approximately 1:30 p.m. – from the worksite to the Reconn's office and said, "I need my truck, I got to go to work." (*Id.* at ¶ 60.)  At the time, Plaintiff was working two additional jobs as a cook – one was as a cook at a bar, and the other was as a cook for a BBQ company that he owned.  (*Id.* ¶ 60; Plaintiff's Deposition at 54-55, ECF No. 27-3.)  Mr. Rivera and Plaintiff went to the service station to check on the vehicle which was not done being serviced.  (Pl's SDF at ¶ 61.)

Defendants allege that after waiting for a period of time, Plaintiff entered the service bay of the shop around 1:40 p.m. where the Commuter Truck was being serviced, and allegedly began yelling at the staff.  (*Id.* ¶ 64.)  Plaintiff then allegedly got into the Commuter Truck and began pulling out of the service bay area.  (*Id.*)  One of the mechanics allegedly saw Plaintiff backing the vehicle out of the service bay, and yelled at Plaintiff to stop.  (*Id.* ¶ 65.)  According to Defendants' evidence, Plaintiff stopped the Commuter Truck, got out and permitted the mechanic to operate the Commuter Truck while driving out of the service bay area.  (*Id.* ¶ 64-65, 68-69.)  The garage manager, Bill Kriebel, then wrote a letter to Reconn to complain about Plaintiff's behavior while in his shop on the day in question.  (Statement of Bill Kriebel, Rivera

Declaration, Exhibit 2, ECF No. 27-2 page 7.)  Mr. Kriebel indicated that Plaintiff entered the

service area of his shop without asking permission and began to drive the Commuter Truck.  (*Id.*)

Plaintiff denies that he yelled at employees of the service station, entered the driver's

compartment of the Commuter Truck or that he began to drive the truck out of the service bay of

the station.  (*Id.* ¶¶ 64-65.)  Thereafter, on March 2, 2022, the Defendants held a disciplinary

meeting with Plaintiff to discuss Mr. Kriebel's complaint regarding Plaintiff's alleged behavior,

and they issued Plaintiff a Written Warning at the conclusion of the meeting.

### 3.      The March 10, 2022 Seatbelt Incident:

On March 10, 2022, Plaintiff's coworker Bernard Richards, III, alleges that he witnessed

Plaintiff driving a Reconn vehicle on a public street as Plaintiff was pulling into the Reconn

office parking lot in King of Prussia, Pennsylvania.  (*Id.* ¶ 93.)  Mr. Richards was an

Environmental Health and Safety Manager for Defendants, and he allegedly observed that

Plaintiff was not wearing his seatbelt while operating the company vehicle.  (Richards

Declaration ¶¶ 11-12, Defs' SUMF, Exhibit F, ECF No. 27-6.)  Mr. Richards allegedly

approached the vehicle in the parking lot and saw Plaintiff sitting on top of his seatbelt which he

alleges was buckled to prevent the safety alarm in automobile from sounding.  (*Id.* ¶ 93.)  Mr.

Richards directed Plaintiff to go home.  (Richards Declaration ¶ 12.)  Plaintiff disputes the

allegation that he was not wearing his seatbelt on the day in question and claims that he always

wore his seatbelt when operating Reconn vehicles on public streets.  (Pl's SDF ¶¶ 94-97.)

Reconn had a policy that required employees to wear seatbelts when operating company

machinery and warned that failure to comply with this policy could result in the termination of

employment.   (Richards Declaration ¶¶ 8, 13.)  A few days later, on or around March 14, 2022,

Mr. Schmidtmann called Plaintiff to tell him that his employment had been terminated.  (Pl's

SDF ¶ 101.)  Thereafter, Plaintiff filed a second Charge of Discrimination.  He then filed the

Complaint that initiated this lawsuit.  During discovery, Defendants came forward with evidence

to establish that at least six other employees had been terminated for violating the company

seatbelt policy.  (Hernandez Declaration ¶ 7, Def's SUMF Exhibit 2, ECF No. 27-5 page 6-7.)

       **B.**      **Procedural Background:**

Plaintiff filed a Charge of Discrimination with the Employment Opportunity Commission

and the Pennsylvania Human Relations Commission on January 6, 2022.  (Charge of

Discrimination.)  On or about March 14, 2022, Defendant Reconn terminated its employment

relationship with Plaintiff.  Plaintiff filed a second Charge of Discrimination after he was

terminated.  Plaintiff then initiated this lawsuit by filing a Complaint in the Eastern District of

Pennsylvania on September 26, 2022.  (Complaint, ECF No. 1.)  Defendants have now filed a

motion for summary judgment as to all counts in the Complaint.

**II.**     **LEGAL STANDARD:**

Summary Judgment is appropriate if the movant shows "that there is no genuine dispute

as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a

motion for summary judgment, there must be a factual dispute that is both genuine and material.

*See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*,

549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the

suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute over a material fact is

"genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving

party."  *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.  DISCUSSION:

Plaintiff asserts the following claims: (A) racial harassment under Title VII and §1981; (B) racial discrimination under Title VII, §1981, the PHRA; and (C) retaliation under Title VII, §1981, and the PHRA. The Court will analyze Plaintiff's claims together since the analysis of the substantive elements of Title VII, §1981, and the PHRA are similar. *Brown v. J. Kaz, Inc.,*

581 F.3d 175, 181–182 (3d Cir.2009); *Harley v. McCoach*, 928 F. Supp. 533, 538 (E.D. Pa. 1996).

### A.      Plaintiff Fails to Establish a Claim for Hostile Work Environment and Racial Harassment:

Plaintiff fails to come forward with evidence or argument in support of his claims for hostile work environment and/or racial harassment under Section 1981, Title VII or the PHRA. Therefore, the Court will grant summary judgment and dismiss those claims from this case.  Title VII provides that it is an "unlawful employment practice" for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ."  42 U.S.C. § 2000e–2(a)(1).

To be actionable under Section 1981, Title VII, or the PHRA, the conduct complained of must be sufficiently severe and/or pervasive to unreasonably interfere with the plaintiff's work environment.  *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993); *Pa State Police v. Suders,* 542 U.S. 129, 146–147 (2004).  A hostile work environment exists when the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *AMTRAK v. Morgan*, 536 U.S. 101, 115-116 (2002) (quoting *Harris*, 510 U.S. at 21.).  The inquiry as to whether an employee's working environment is sufficiently hostile or abusive to constitute a violation of Title VII is not "mathematically precise[.]"  *Harris*, 510 U.S. at 22.  Relevant factors include "whether the alleged discriminatory harassment is frequent, whether it is severe, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance."  *Hubbell v. World Kitchen, LLC,* 688 F. Supp. 2d 401, 419 (W.D. Pa. 2010) (citing *Harris,* 510 U.S. at 23).

Plaintiff filed a brief in opposition to Defendant's motion for summary judgment but failed to address hostile work environment and racial harassment theories asserted in his Complaint.  Plaintiff's failure to brief arguments in opposition to Defendants' clear challenge to these claims acts as a waiver to maintain a lawsuit on these grounds.  It is well-settled that, "[w]here a plaintiff has brought a cause of action which is challenged through a motion for summary judgment as legally insufficient, it is incumbent upon the plaintiff to affirmatively respond to the merits of a summary judgment motion."  *Skirpan v. Pinnacle Health Hosps*., No. 07–1703, 2010 U.S. Dist. LEXIS 94499, at *17 (M.D. Pa. Apr. 21, 2010).  In such circumstances, a "Plaintiff's failure to respond to these arguments constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues."  *Id.*; *see also Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 433 (E.D. Pa. March 21, 2008) (finding that because plaintiff failed to address the portion of defendant's motion for summary judgment in her response, "plaintiff's failure ... constitute[d] abandonment of those claims.").

It his Statement of Undisputed Facts, Plaintiff makes passing reference to an instance when Jose Rivera allegedly used a racial slur in his presence.  (Plaintiff's Statement of Undisputed Facts ¶ 41; ECF No. 28-3.)  Jose Rivera denies that he used a racial slur when speaking with the Plaintiff.  (Rivera Declaration ¶ 9, Defs' SUMF, Exhibit B, ECF No. 27-2.)  Plaintiff failed to mention Mr. Rivera's purported use of a racial slur in either of the Charges of Discrimination that he filed.  Therefore, Plaintiff has failed to exhaust administrative remedies on this claim and, arguably, waived the ability to proceed.  *Barzanty v. Verizon PA, Inc.*, 361 F. App'x. 411, 414 (3d Cir. 2010) (affirming a grant of summary judgment based on the conclusion that plaintiff failed to exhaust remedies with respect to her hostile work environment claim because it was not within the scope of her EEOC charge).  Furthermore, Plaintiff's unsupported

allegation that a racial slur was used in his presence on an isolated occasion is insufficient to establish a claim for hostile work environment or harassment.  *Boyer v. Johnson Matthey, Inc.*, No. 2-8382, 2005 U.S. Dist. LEXIS 171 (Pa. E.D. January 6, 2005) (using of a racial slur, although offensive, does not constitute regular and pervasive harassment of a plaintiff); *Acosta v. East Penn Mfg. Co.*, No. 14-1859, 2015 U.S. Dist. LEXIS 133240, at *24 (E.D. Pa. Sept. 30, 2015) (granting summary judgment on a hostile work environment claim because the plaintiff failed to plead facts to suggest that the "bullying" or "poor training" were "attributable to [the plaintiff's] race as required to satisfy the first prong of the hostile work environment.").

Plaintiff fails to come forward with evidence that directly supports theories of hostile work environment and racial harassment; therefore, summary judgment will be granted as to these aspects of his case.

**B.      Plaintiff's Claim for Racial Discrimination Based on Circumstantial Evidence:**

Plaintiff asserts a case for racial discrimination based on circumstantial evidence under Title VII, Section 1981, and the PHRA.  Plaintiff alleges that the Company Defendants subjected him to adverse employment actions based on racial discrimination.  In support of his claim, he cites to the fact that Defendant removed him from the Locusview Project, (2) allegedly failed to promote him to a position that he purports was open and available as a Vac Tech lead driver or foreman, and (3) that they ultimately terminated his employment for filing a Charge of Discrimination.

Plaintiff's circumstantial racial discrimination claim under Section 1981, Title VII and the PHRA is subject to the familiar *McDonnell Douglas* burden shifting framework, which first requires a plaintiff to make a *prima facie* case by showing that: (i) he is a member of a protected class; (ii) he met or exceeded legitimate performance expectations; (iii) defendant took an

adverse employment action against him (by failing to promote him or firing him); and (iv) that the circumstances give rise to an inference of unlawful discrimination. *Jones v. School Distr. of Philadelphia,* 198 F.3d 403, 410 (3rd Cir. 1999). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the act complained of. If the defendant carries this burden, the plaintiff then has an opportunity to show that the legitimate reasons offered by the defendant were pretext for discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3rd Cir. 2008). An inference of race-based discrimination cannot arise simply from an employee's subjective belief that his or her race somehow influenced the challenged employment action. *Wilson v. Blockbuster, Inc.,* 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008); *Tillman v. Redevelopment Auth.,* No. 12-1505, 2013 U.S. Dist. LEXIS 147234, at *22 (E.D. Pa. Oct. 11, 2013) ("A plaintiff's own unsubstantiated, subjective beliefs or suspicions alone would not suffice to persuade a rational trier of fact that age [or race] was a factor in the termination decision.").

1. **Plaintiff's Removal from the Locusview Project:**

The mere fact that Plaintiff was removed from the Locusview Project does not establish his claim for racial discrimination. The evidence of record suggests that PECO, rather than the Defendants, made the decision to remove Plaintiff, all with other coworkers, from the Locusview Project. Therefore, entry of summary judgment is appropriate on these claims because before a plaintiff can create an inference that his/her employer's decision was imbued with illegal discriminatory intent, the plaintiff must first show that the employer actually made the decision complained of. *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (describing an "adverse employment action [is] an action *by an employer* that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.").

The undisputed evidence of record establishes that PECO made the decision to reduce staffing on the Locusview Project from eight to three.  (Pl's SDF ¶ 27.)  PECO specifically selected the three individuals to remain on the job – Bob D'Ginto (with purportedly more than 10 years of experience at USIC), Mike Fondots (with more than purportedly 25 years of experience at USIC), and Nick Wheeler (more than 10 years of experience at USIC).  (*Id.* ¶ 29.)  Plaintiff was removed from the Locusview Project as part of PECO's reduction in staffing.

Plaintiff had been assigned to the Locusview Project after he was injured and requested a light duty assignment.  (*Id.* ¶¶ 21-25.)  Plaintiff had no prior experience locating and/or mapping underground wires when he was assigned to the Locusview Project as part of a light duty medical accommodation.  (*Id.*)  Plaintiff remained on the Locusview Project for approximately three years.  (*Id.*)  In connection with Plaintiff's reassignment from the Locusview Project, Plaintiff declined to accept Defendants' job offer as a utility locator with Defendant USIC.  (*Id.* ¶ 42, Plaintiff's Deposition at 122.)  The fact pattern surrounding Plaintiff's reassignment from the Locusview Project does not establish a circumstantial case for racial discrimination against Defendants; therefore, the Court will enter summary judgment on these claims.

**2.      Failure to Promote:**

Plaintiff's claim based on a theory of failure-to-promote is based on allegations that Defendant failed to offer him a position as lead driver and/or a position as a foreman.  The facts and evidence surrounding both of these situations do not establish a claim for failure-to-promote.  To establish a *prima facie* claim for the failure-to-promote, a plaintiff must show that he or she: (1) belongs to a protected group; (2) applied for and had the requisite qualifications for an available job; (3) was rejected for that position; and (4) after the plaintiff's rejection, the defendant continued to seek applications from individuals with the plaintiff's qualifications.

*Bray v. Marriott Hotels*, 110 F.3d 986, 990 (3d Cir. 1997) (citing *McDonnell Douglas Corp.*, 411

U.S. at 802. *Sampath v. Concurrent Techs. Corp.*, 299 F. App'x. 143, 145 n.3 (3d Cir. 2008);

*Pivirotto v. Innovative Sys.*, 191 F.3d 344, 356-57 (3d Cir. 1999); *Barber v. CSX Distrib. Servs.*,

68 F.3d 694, 698 (3d Cir. 1995).  If the plaintiff satisfies the elements of the prima facie case, the

burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory

reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802.

Once the defendant meets this burden, the plaintiff must present either direct or

circumstantial evidence sufficient to cause a fact finder to disbelieve the legitimate reason

articulated by the defendant or to believe that an illegal discriminatory motive more likely than

not caused the adverse action.  A plaintiff satisfies this requirement on summary judgment by

showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in

the defendant's reason that a rational fact finder might find them pretextual.  *Fuentes v. Perskie*,

32 F.3d 759, 764-65 (3d Cir. 1994).

Plaintiff's failure-to-promote claim based on allegations that Defendants failed to offer

him a position as a lead driver does not satisfy the second element of the requisite test for

evaluating a failure to promote claim – that Defendants had an available open position for a lead

driver during his tenure with Reconn.  There is no evidence in the record – with the exception of

Plaintiff's own testimony – to establish that Reconn had an official job designation for a lead

driver.  Disregarding Plaintiff's own testimony, all of the evidence of record suggests that

Reconn referred to both lead drivers and helpers generally as Vac Techs.  Vac Techs were

expected to serve in either role (i.e., drive the Vac Truck or drive the chase truck)

interchangeably as needed.  (Pl's SDF ¶ 10-11.)  The Court is persuaded by evidence presented

by Defendants which establishes that besides from driving different trucks to the worksite, there

was no difference (either in pay or in job responsibilities) between a lead driver and helper which is insufficient to support a claim for failure-to-promote.  (*Id.* ¶ 10-11; *Jones v. SEPTA*, 796 F.3d at 326; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (3d Cir. 2015) (collecting cases stating that a "bruised ego," a demotion without change in pay, benefits, duties, or prestige; and a reassignment to a more inconvenient job did not constitute adverse employment actions).

Plaintiff's claim that Defendants failed to promote him to the job title of foreman is equally deficient.  Plaintiff alleges that in June 2019, Defendants promoted a Cuacasion employee named Ryan Sankus to the job title of foreman.  (Plaintiff's Statement of Undisputed Facts ¶¶ 46-48.)  However, Plaintiff failed to establish that he applied for the open position as foreman or that he inquired with Reconn's or USIC's human resources department, or anyone else, about becoming a foreman or being promoted to another position.  (Pl's SDF ¶ 47; Plaintiff's Deposition at 141-142, ECF No. 27-3.)  Therefore, Plaintiff's claim that Defendants discriminated against him by failing to promote him to foreman fails because Plaintiff never expressed interest in or applied to any such position.  *Bray*, 110 F.3d at 990 (holding that a prima *facie case* for failure to promote claim requires application and rejection to establish adverse action)).

Plaintiff also failed to present evidence to establish that he was constructively denied the opportunity to submit an application for a promotion based on race or racial discrimination.  As a general rule, Plaintiff must have applied for a position in order to satisfy the second *prima facie* element of a failure-to-promote discrimination claim.  However, even if a plaintiff has not submitted a formal application for a position, he or she may still make out a claim "as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990).  "When a person's desire for a job is not

translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366 (1977). Courts have found that plaintiff effectively applied for a position when the employer never posted a vacancy and in the past the employee had generally expressed interest in a similar opportunity, where an employer relied exclusively on word-of-mouth communication and had actively discouraged applications from a protected class in the past, and where plaintiffs had expressed interest and applied for an identical position in the past. *Metal Serv. Co.*, 892 F.2d at 348.

Realistically, Plaintiff spent three of the previous years prior to being terminated working as an underground utility locator not as a Vac Tech. Plaintiff requested to be laid off when Defendants offered him an opportunity to continue his employment as a Vac Tech. Plaintiff's purported interest in working a Lead Driver or foreman on the Vac Tech crew is extremely suspect under the circumstances. There is no basis for Plaintiff's failure-to-promote racial discrimination claim given the fact that Plaintiff never even attempted to apply for a promotion with Defendants Reconn or USIC. Therefore, the Court will enter summary judgment on Plaintiff's failure-to-promote claim.

### 3.     The Court Will Enter Summary Judgment on Plaintiff's Claim for Wrongful Termination:

The Court will dismiss Plaintiff's claim for wrongful termination because Defendants established a legitimate business justification for terminating their employment relationship with Plaintiff. Defendants point to safety violations that they claim Plaintiff committed while operating company owned vehicles to justify their decision to fire him. These safety violations purportedly occurred during the two incidents described in the fact section hereinabove – the

16

auto garage incident on February 23, 2022 and the seatbelt incident on March 10, 2022.  The

employer's burden in establishing a legitimate business justification for taking an adverse action

is "'relatively light' and is satisfied if the employer provides evidence, which, if true, would

permit a conclusion that it took the adverse employment action for a non-discriminatory reason."

*Burton v. Teleflex, Inc.*, 707 F.3d 417 (3d Cir. 2013).

 Once the defendant employer has come forward with a legitimate business justification

for the adverse action taken against the employee, the employee must come forward with

evidence to establish that the proffered justification is merely a pretextually excuse for

discrimination.  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  An employee may

demonstrate that his employer's legitimate nondiscriminatory reason is pretextual by submitting

evidence that allows a fact finder to either (1) disbelieve or discredit the employer's justification;

or (2) believe discrimination was more likely than not a "but for" cause of the adverse

employment action.  *Abels v. Dish Network Serv.*, LLC, 507 F. App'x 179, 183 (3d Cir. 2012)

(citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. Aug 1, 1994).  *Gross v. FBL Fin. Servs.*,

557 U.S. 167, 177-178 (2009).  Evidence undermining an employer's proffered legitimate

reasons must be sufficient to "support an inference that the employer did not act for its stated

reasons."  *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995).

 In order to discredit the proffered justification under the test established by *Fuentes*,

plaintiff must present evidence demonstrating "such weaknesses, implausibilities,

inconsistencies, incoherencies (sic), or contradictions" in the proffered reasons "that a reasonable

fact finder could rationally find them unworthy of credence," and ultimately infer that defendants

did not act for the asserted nondiscriminatory reasons.  *Fuentes v. Perskie*, 32 F.3d at 765.  To

show that an invidious discriminatory reason was more likely than not a motivating or

determinative cause of the employer's action, "the plaintiff must point to evidence with sufficient probative force that a fact finder could conclude by a preponderance of the evidence that [race] was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers*, 142 F.3d at 644-645 (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d. Cir. 1997)).  Examples include showing that the employer has previously discriminated against plaintiff, that the employer has discriminated against members of plaintiff's protected class or another protected class, or that similarly situated people not within plaintiff's class were treated more favorably.  *Id.* at 645 (citing *Fuentes v. Perskie*, 32 F.3d at 765).

The question is whether the employer (defendant) was motivated by a discriminatory animus, not whether its decision was wise, shrewd, prudent, or competent.  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason."); *Nyamekye v. Penn Hills Sch. Dist.*, 2017 U.S. Dist. LEXIS 148098, at *13 (W.D. Pa. Sep 13, 2017) (plaintiff's contention that the allegations about her performance were untrue fails to discredit the Defendant's proffered justification because "so long as the decision-maker reasonably credited the allegations, an employee's denial is not enough to establish pretext."); *Parker v. Verizon Pa, Inc.*, 309 F. App'x. 551, 556 (3d Cir. 2009) ("To discredit the proffered reason, Parker cannot simply show that the employer's decision was wrong or mistaken but must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence' and hence infer that the employer was not actually motivated by its proffered nondiscriminatory reason.").

In reference to the garage incident, Plaintiff adamantly denies that he entered the driver's compartment of the Commuter Truck, started the engine or began to back the truck out of the service bay of the auto garage.  (Pl's SDF ¶¶ 64-70; ECF 28-2.)  To the contrary, Plaintiff claims that one of the employees at the auto garage backed the Commuter Truck out of the service area of the auto garage.  (*Id.*)  However, garage manager Bill Kriebel – a third-party to this litigation – wrote a letter to Defendant Reconn in which he complains about Plaintiff's aggressive behavior and contradicts Plaintiff's version of events.  (Statement of Bill Krebel, Rivera Declaration, Exhibit 2, ECF No. 27-2 page 7.)  Plaintiff also testified that he was wearing his seatbelt when he pulled into Reconn's parking lot on March 10, 2022.  (Pl's SDF ¶¶ 93-95, 97.)  Plaintiff claims that Safety Manager Bernard Richards, III, was incorrect when he accused Plaintiff of not wearing a seatbelt.  (Plaintiff's Statement of Undisputed Facts ¶ 39.)  However, Mr. Richards clearly testified and avers that he saw the Plaintiff operating a company vehicle while not wearing a seatbelt.  (Bernard Richards Declaration, ECF No. 27-6; Deposition of Bernard Richards, ECF No. 30-5.)

Defendants assert that they terminated their employment relationship with Plaintiff because of the above-referenced driving infractions – the garage incident and his failure to wear a seatbelt.  Nothing in the record suggests that Defendants' proffered justification was a post hoc fabrication; rather, the record suggests that it was a contemporaneous documented basis for dismissal.  Defendants' basis for dismissal was specific and substantiated by direct evidence – Mr. Richards' eyewitness account in conjunction with the previous complaint from garage manager Kriebel.  Defendants' justification for firing Plaintiff was not vague, conclusory or speculative.  Defendants had an established policy of require employees to wear seatbelts when

operating company vehicles, and they found that Plaintiff had violated that policy.[3]  An employer

may use "statements and complaints by co-workers when making a decision to terminate an

employee," and "the employee cannot later establish pretext by simply challenging the veracity

of such statements."  *McNeil v. Greyhound Lines, Inc.*, 69 F. Supp. 3d 513, 524 (E.D. Pa. Nov.

25, 2014) (quoting *McCormick v. Allegheny Valley Sch.*, 2008 U.S. Dist. LEXIS 8533, at *43

(E.D. Pa. Feb. 4, 2008).  "So long as the decision-maker reasonably credited the allegations, an

employee's denial is not enough to establish pretext."  *Id.*  Therefore, Plaintiffs denial of

allegations related to purported driving infractions is insufficient to create a genuine issue of

material fact.  *Ade v. KidsPeace Corp.*, 401 F. Appx. 697, 703 (3d Cir. 2010) (citing *Waggoner v.

Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993)) (veracity of underlying charge "largely irrelevant"

where employer had "good faith belief" that employee committed offensive behavior).

### C.   The Court Rejects Plaintiff's Claim for Retaliation:

Plaintiff is unable to establish that Defendants retaliated against him for filing a Charge

of Discrimination with the Equal Employment Opportunity Commission and the Pennsylvania

Human Relations Commission.  The *McDonnell Douglas* burden-shifting framework described

hereinabove applies to Plaintiff's retaliation claim.  *Moore v. City of Philadelphia*, 461 F.3d 331,

342 (3d Cir. Sept. 13, 2006) ("To establish a *prima facie* case of retaliation under Title VII, a

plaintiff must tender evidence that: '(1) [plaintiff] engaged in activity protected by Title VII; (2)

the employer took an adverse employment action against [plaintiff]; and (3) there was a causal

connection between [plaintiff's] participation in the protected activity and the adverse

employment action.'").

---

[3]  Defendants came forward with evidence to establish that it had fired at least six other
employees for violating the seatbelt policy.  (Hernandez Declaration ¶ 7, Def's SUMF Exhibit 2, ECF No.
27-5 page 6-7.)

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the act complained of. *Moore*, 461 F.3d at 342. If defendant carries this burden, the plaintiff then has an opportunity to show that the legitimate reasons offered by the defendant were pretext for retaliation. *Id*. At this stage, a plaintiff must show but-for causation and that "retaliatory animus was the *real reason* for the adverse employment action." *Carvalho-Grevious v. Delaware State Univ*., 851 F.3d 249, 257 (3d Cir. 2017) at 258 (quoting *Moore*, 461 F.3d at 340–41.). Temporal proximity of a retaliatory act to a protected activity is probative, but not dispositive of the causation element. Where temporal proximity is not "unusually suggestive" of retaliatory motive, the Third Circuit has demanded further evidence to substantiate a causal connection. *McCloud v. United Parcel Serv.*, Inc, 543 F. Supp. 2d 391, 401-02 (E.D. Pa. 2008). "Such other evidence may include, but is not limited to, a 'pattern of antagonism" by the employer that could link the adverse action with Plaintiff's complaint." (*Id.*)

Assuming arguendo that Plaintiff is able to establish a *prima facie* claim of retaliation, Defendants have carried their burden of production under step two of the *McDonnel Douglas* framework – Defendants offer a legitimate justification for terminating their employment relationship with Plaintiff. As previously mentioned, Defendants offer the alleged safety violations that purportedly occurred during the auto garage incident on February 23, 2022 and the seatbelt incident on March 10, 2022. Therefore, Plaintiff's claim based on a theory of employment retaliation fails because he has not offered evidence that the allegedly legitimate nondiscriminatory justification for terminating his employment was a pretextual excuse for engaging in unlawful discrimination. *Capps v. Mondelz Global*, LLC, 847 F.3d 144, 152 (3d Cir. Jan. 30, 2017); *Sinico v. Pennsylvania*, 2024 U.S. App. LEXIS 3120 (3d Cir. Feb 9, 2024).

**IV.     CONCLUSION**:

For these reasons, Defendants' motion for summary judgment will be granted.  The Court will file an appropriate order along with this memorandum.

BY THE COURT:

   /s/ John Milton Younge
Judge John Milton Younge